IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL RANDALL | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-3864 |
| CITY OF PHILADELPHIA, ET AL. | : | |

**SURRICK, J.**                                                         **AUGUST 20, 2014**

**MEMORANDUM**

Presently before the Court is Defendant Police Officer Rabecca Bozeman's Motion for

Summary Judgment (ECF No. 27), and Defendant City of Philadelphia's Motion for Summary

Judgment (ECF No. 26).  For the following reasons, Defendants' Motions will be granted.

**I.      BACKGROUND**

**A.      Factual Background**

On July 29, 2010, at approximately 6:05 p.m., Plaintiff Daniel Randall was standing on

the corner of Frankford and Granite Avenues in Philadelphia, Pennsylvania.  (Citation, Bozeman

SJ Mem. Ex. B, ECF No. 27.)  It is undisputed that this is a high drug trafficking area.  (Randall

Dep. 26, Pl.'s Bozeman Resp. Ex. B, ECF No. 30; Bozeman Dep. 99, Pl.'s Bozeman Resp. Ex.

A.)  Plaintiff had just finished up his shift working at Value Plus and was waiting for his brother

to pick him up from the corner.  (Randall Dep. 21.)  Defendant Police Officer Rabecca Bozeman

drove by Plaintiff while he was standing on the corner, and looked at him.  Plaintiff looked back.

Officer Bozeman then drove away.  (*Id*.)  At approximately 6:19 p.m., Officer Bozeman returned

to the corner, got out of her vehicle, and requested that Plaintiff provide her with identification.

(*Id*. at 21-22.)  At first, Plaintiff refused to give Officer Bozeman identification, asking her why

he was being stopped.  (*Id*. at 22.)  Officer Bozeman told Plaintiff that he was being stopped

because he had been standing at the corner for over an hour.  (*Id*.)  Plaintiff responded that he could not have been standing there for over an hour because he just got out of work fourteen minutes ago.  (*Id*. at 22.)  Officer Bozeman again requested Plaintiff's identification.  (*Id*.) Plaintiff became irate, and used profanities towards Officer Bozeman.  (*Id*. at 37-38.)  Plaintiff told Officer Bozeman that she was harassing him without any justification.  (*Id*. at 23.)  Plaintiff finally handed Officer Bozeman his identification and walked across the street to look in a store window.  (*Id*.)  After Officer Bozeman returned Plaintiff's identification to him, Plaintiff walked to the Dollar Store and called the police to advise them that Officer Bozeman was harassing him. (*Id*.)  The dispatcher told Plaintiff to stand in front of Value Plus and wait for a sergeant.  (*Id*.)

While Plaintiff was waiting for the sergeant, two other officers approached and told Plaintiff that he had to move off of the corner.  (*Id*. at 24.)[1]  Plaintiff refused, advising them that the dispatcher said to wait there for the sergeant.  (Randall Dep. 24-25.)  Officer Bozeman was present for this encounter.  (*Id*. at 25.)  The two officers requested Plaintiff to leave the corner multiple times and warned Plaintiff that if he did not move off of the corner, he was going to be arrested for disorderly conduct.  (*Id*. at 25-26.)  Plaintiff was irate, used profanity, and continued to refuse to leave the corner.  (*Id*.)  Officer Bozeman testified that Plaintiff was hostile towards the police officers, shouted profanities at them, and that Plaintiff's actions drew a crowd of about five to seven people on the street corner.  (Bozeman Dep. 98-99; Citation.)  During his deposition, Plaintiff never addressed whether a crowd formed during the incident.  Plaintiff also never testified about whether he was shouting profanities.  Plaintiff testified that he "used" profanities, but that he did not recall what he said exactly, except that the profanities related to

---

[1] The identity of these two police officers is not clear.  Bozeman testified that the officers' names were Mike Smith and Kirk Dodd; however, these two officers, when deposed, had no recollection of the encounter with Plaintiff.  (Pl.'s Bozeman Resp. 2 n.1.)

his belief that he was being harassed by the police officers.  (Randall Dep. 37-38.)  Officer Bozeman stated that she also did not recall all of the profanities, but that she did recall him saying "I ain't fucking going" in response to being asked to move off of the corner.  (Bozeman Dep. 99.)  One of the officers made a comment that Plaintiff and Al Sharpton should join forces. (*Id*.)  Plaintiff was then arrested, and searched.  (*Id*.)  He was taken to the 15th District Police Station where he was retained for several hours.  (*Id*. at 39-40.)  Plaintiff was given a citation, charging him with Disorderly Conduct under 18 Pa. Cons. Stat. § 1503(a).  (Citation.)  The charges against him were ultimately dropped on July 26, 2011.  (Bozeman SJ Mem. Ex. F.)

Officer Bozeman entered the Philadelphia Police Academy in September 2007.  (Grade Sheet, City SJ Mem. Ex. A, ECF No. 30.)  At the Academy, Officer Bozeman's training consisted of state-mandated courses on ethics in law enforcement, criminal law, criminal procedure, the laws of arrest, civil laws, constitutional law, and authority and jurisdiction, among other courses.  (PPD Training, City SJ Mem. Ex. C; *see also* City SJ Mem. 3.)  After completing the required training and becoming certified by the Municipal Police Officer's Education and Training Commission ("MPOETC"), Officer Bozeman was sworn in as a police officer on April 4, 2008.  (Grade Sheet.)  As a sworn police officer in Pennsylvania, Officer Bozeman was required to undergo annual in-service training.  (City SJ Mem. 3 & Ex. D.)  During her time as a police officer for the PPD, Officer Bozeman was disciplined on at least six occasions for violating police procedures for sick leave.  (Pl.'s City Resp. Ex. A, ECF No. 31.)  Officer Bozeman was suspended without pay three separate times for these violations.  (*Id*.)  Officer Bozeman's personnel records indicate that on one occasion during her tenure with the PPD, she tested positive during a random drug test.  (Pl.'s City Resp. Ex. C.)  In addition, Officer Bozeman was disciplined on three occasions for engaging in criminal conduct—check fraud—

3

which resulted in her dismissal from the PPD in February 2011.  (City SJ Mem. Ex. B; Pl.'s City Resp. Ex. D.)

       **B.**       **Procedural History**

On July 2, 2013, Plaintiff filed a Complaint asserting claims for excessive force, false arrest, malicious prosecution, failure to train and supervise under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and intentional infliction of emotional distress. (Compl., ECF No. 1.)  The parties later agreed to the dismissal of most of the Counts asserted in the Complaint on the basis that the claims were barred by the applicable statute of limitations.  (*See* ECF Nos. 2, 3, 4.)  The remaining claims subject to the instant Summary Judgment Motions are Plaintiff's federal and common law malicious prosecution claims against Bozeman and the City of Philadelphia.  Count IV is a federal malicious prosecution claim against the City of Philadelphia based on its alleged failure to train, supervise, and discipline police officers on arrests and citations.  Count V asserts federal and common law malicious prosecution claims against Bozeman and the City of Philadelphia.

On May 22, 2014, the City of Philadelphia filed its Motion for Summary Judgment. (City SJ Mot., ECF No. 26; City SJ Mem.)  On May 29, 2014, Bozeman filed her Motion for Summary Judgment.  (Bozeman SJ Mot., ECF No. 27; Bozeman SJ Mem.)  On June 17, 2014, Plaintiff filed a Response in Opposition to Bozeman's Summary Judgment Motion.  (Pl.'s Bozeman Resp.)  On June 29, 2014, Plaintiff filed a Response in Opposition to the City of Philadelphia's Summary Judgment Motion.  (Pl.'s City Resp.)

## II.      LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .");  *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The nonmoving party may not avoid summary judgment by relying on speculation or by rehashing the allegations in the pleadings.  *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).  When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  Moreover, courts must not resolve factual disputes or make credibility determinations.  *Siegel Transfer, Inc. v. Carrier Express, Inc*., 54 F.3d 1125, 1127 (3d Cir. 1995).

III.    **DISCUSSION**

Defendants Officer Bozeman and the City of Philadelphia request that judgment be entered in their favor on the section 1983 and common law malicious prosecution claims asserted in Count V of the Complaint.  In addition, the City of Philadelphia seeks summary judgment on the *Monell* claim asserted in Count IV of the Complaint.

A.    **Section 1983 Claim Against Officer Bozeman (Count V)**

Plaintiff asserts a malicious prosecution claim against Officer Bozeman under 42 U.S.C. § 1983, alleging that he was wrongfully and maliciously cited for disorderly conduct.  In support of her request for summary judgment on this count, Officer Bozeman argues that the doctrine of qualified immunity shields her from liability because the record demonstrates that probable cause existed to cite Plaintiff for disorderly conduct.  Plaintiff responds that the doctrine of qualified immunity does not apply here because Bozeman lacked the requisite probable cause.

Under the doctrine of qualified immunity, government officials such as police officers are protected from liability under section 1983 claims "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  To determine if an official is entitled to qualified immunity, courts apply a two-step process:  (1) determine whether the defendant violated the Plaintiff's constitutional right; and (2) determine whether that right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006).  Depending on the facts of the particular case, the elements can be analyzed in either order.  *Mortanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010).  We need not address the second step

as we find that Bozeman did not violate Plaintiff's Fourth Amendment rights by issuing him a

citation for disorderly conduct.

> To state a claim for malicious prosecution under § 1983, a plaintiff must show that:
>
> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). The parties' dispute centers on the third

element—the existence of probable cause.[2]

Officer Bozeman argues that the undisputed facts contained in the summary judgment

record demonstrate that she had probable cause to arrest Plaintiff for disorderly conduct. Under

Pennsylvania law, a person is guilty of disorderly conduct if, with the intent or reckless disregard

to cause public inconvenience, annoyance or alarm, he

> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. Cons. Stat. § 5503(a). "Under the statute, whether a defendant's words or acts rise to the

level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public

disturbance." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999).

---

[2] Officer Bozeman also contends that Plaintiff failed to demonstrate the forth element of a claim for malicious prosecution—that she acted maliciously or for a purpose other than bringing the plaintiff to justice. We need not address this element because we conclude that Defendant failed to demonstrate that Officer Bozeman lacked probable cause to cite him for disorderly conduct. However, even if probable cause were lacking, Plaintiff's malicious prosecution claim nevertheless fails to survive summary judgment because he has pointed to no facts demonstrating that Officer Bozeman acted maliciously, willfully, or for a purpose other than honestly believing that Plaintiff was guilty of disorderly conduct.

Probable cause for a charge exists where "the facts and circumstances within the arresting officer's knowledge are sufficient within themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The question is "whether, looking at the totality of the circumstances at the time of the arrest, 'the objective facts available to the officers . . . were sufficient to justify a reasonable belief that an offense [had been] committed.'" *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003) (quoting *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984)).

Here, the record shows that Plaintiff was standing on a public sidewalk that is known to be a high drug-trafficking corner when he was first approached by Officer Bozeman. The record also shows that despite several warnings from the police officers to leave the corner, Plaintiff did not leave. The officers even warned Plaintiff that if he did not leave, that they would be forced to arrest him for disorderly conduct. Plaintiff still did not comply with the police officers' orders. Instead, Plaintiff became irate and shouted profanities at the police officers.[3] The interaction between Plaintiff and the officers drew a crowd of approximately five to seven people from the sidewalk. Based on these facts, we are satisfied that Bozeman acted reasonably in believing that Plaintiff intended to cause, or recklessly caused public inconvenience, annoyance, or alarm by shouting profanities at the police officers, and drawing a crowd to the corner. In addition, Plaintiff's refusal to obey the police officer's repeated orders to leave the corner supports a finding that Bozeman had adequate probable cause to cite Plaintiff for disorderly conduct. *See Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008) (affirming summary

---

[3] Plaintiff does not recall what statements or profanities he specifically used, but he remembers that they related to his accusation that the police officers were "harassing" him. (Randall Dep. 37-38.)

judgment on malicious prosecution claim arising from arrest for disorderly conduct and stating that "although speech may be protected [by the Constitution], Appellants' choice to disobey police orders is not"); *Diener v. Reed*, 77 F. App'x 601, 610 (3d Cir. 2003) ("Forcibly entering or remaining in an area in which one is unwelcome after the police have requested that the person leave may create a hazardous condition and reflect an intent to cause public inconvenience, annoyance or alarm."). It is of no consequence that Plaintiff may have only intended to direct his "irate" behavior at the police officers, and not at other individuals on the sidewalk. *Commonwealth v. Young*, 535 A.2d 1141, 1143 (Pa. Super. Ct. 1988) ("[O]ne who exhibits disorderly behavior in a public place is guilty of disorderly conduct even if that behavior is directed at a single individual.").

Plaintiff argues in his Response that two material facts related to the probable cause determination are in dispute, thus precluding summary judgment in favor of Bozeman. Specifically, Plaintiff contends that the following facts are in dispute: (1) that he "shouted" profanities at the police officers; and (2) that his actions drew a crowd of five to seven pedestrians to the scene of the incident. It is significant that Plaintiff does not outright deny these facts. Instead, he merely asserts that the only evidence in the record revealing that profanities were "shouted" as opposed to "used" and that a crowd gathered at the scene is found in the deposition testimony of Bozeman. During his deposition, Plaintiff did not testify as to whether a crowd formed around him. He also did not testify regarding the volume of his voice when he "used profanities" towards the police officers. Plaintiff was not asked these questions by his attorney and was not asked these questions by counsel for Defendants. The only evidence in the record is Officer Bozeman's testimony that Plaintiff shouted profanities and that this caused a crowd to form.

Plaintiff invites us to conclude that because these facts were provided by Officer Bozeman and not corroborated by Plaintiff's own deposition testimony, they must be in dispute. This is simply wrong. The fact that Plaintiff chose not to address the allegations that he shouted and drew a crowd during his deposition does not mean that Officer Bozeman's allegations are disputed. The absence of a contrary allegation does not necessarily mean that a fact is in dispute. Bozeman met her initial burden of identifying those portions of the record that she believed demonstrated the absence of a disputed material fact. To defeat summary judgment, the onus was on Plaintiff to identify facts of record that contradict the facts identified by Bozeman. *See* Fed. R. Civ. P. 56(c)(1) (stating that the non-moving party "asserting that a fact . . . is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials"). Plaintiff failed to do this. He may not meet his burden by merely relying on denials in his pleadings, as he attempted to do here. *See First Nat. Bank of Pa. v. Lincoln Nat. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987) (directing that summary judgment be entered on behalf of the defendant where the plaintiff failed to summit evidence to contradict the defendant's evidence and instead relied on denying the defendant's stated facts); *see also* Fed. R. Civ. P. 56(e) (stating that when a non-moving party "fails to properly address another party's assertion of fact," the Court may "consider the fact undisputed for purposes of the motion"); *Papa v. Chester Cnty. Prison*, No. 12-3241, 2013 U.S. Dist. LEXIS 13054, at *11 (E.D. Pa. Jan. 31, 2013) (stating that "at summary judgment, the burden is on the non-movant, not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment") (internal quotation marks omitted). Bozeman's assertions that Plaintiff shouted profanities and drew a large crowd are material facts in this case. Indeed, the

facts are explicitly stated in Plaintiff's citation for disorderly conduct.  The Citation states that

Plaintiff "became hostile towards police and began shouting profanities drawing a crowd of

people to the location."  (Citation.)  The Citation also states that Plaintiff could "not be calmed

down verbally."  (*Id*.)  Plaintiff had every opportunity to dispute these material facts by

submitting contradicting evidence through deposition testimony, affidavits, or other documents.

His choice not to do so is fatal to his claim.  Summary judgment will be entered in favor of

Bozeman on Count V.

**B.      Section 1983 Claims Against the City of Philadelphia (Counts IV & V)**

Plaintiff's claims against the City of Philadelphia in Counts IV and V allege violations of

Plaintiff's constitutional rights as a result of the City's policies, customs, and failure to train,

supervise, or discipline its police officers.  The City of Philadelphia contends that it is entitled to

summary judgment on both counts because:  (1) Plaintiff has not suffered a constitutional

violation; and (2) Plaintiff has failed to produce sufficient evidence for a reasonable jury to

conclude that his prosecution for disorderly conduct was caused by an unconstitutional policy or

widespread custom or practice.  (City SJ Mem. 2.)

To maintain a section 1983 claim against the City of Philadelphia, Plaintiff must show

that the alleged constitutional violation—here, that he was maliciously prosecuted for disorderly

conduct—was a result of a municipal policy, custom, or practice.  *See Monell*, 436 U.S. at 691;

*Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).  The City of Philadelphia cannot be held

liable for the acts of its police officers under a theory of respondeat superior.  *Sanford*, 456 F.3d

at 314 (citing *Monell*, 436 U.S. at 691).  Rather, Plaintiff must show that the City itself, through

the implementation of a policy, custom, or practice, caused the constitutional violation.  *Beck v.

City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).  The municipal policy or custom must be the

11

"moving force" behind the constitutional violation such that there is a direct link between the municipal policy or custom and the deprivation of constitutional rights. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

A section 1983 claim against a municipal entity may also be predicated on a failure-to-train theory. For this claim to survive summary judgment, Plaintiff must show that the City of Philadelphia's failure to adequately train its police officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Deliberate indifference is generally shown in two ways. First, Plaintiff can show that the City of Philadelphia failed to respond to a pattern of violations. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Alternatively, Plaintiff can show that that the violation was "'a highly predicable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Id.* (quoting *Brown*, 520 U.S. at 409). In other words, Plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

The City of Philadelphia first contends that summary judgment is appropriate because Plaintiff has failed to demonstrate that he has suffered a constitutional violation. Specifically, the City contends that Officer Bozeman had probable cause to cite Plaintiff for disorderly conduct, and that as a result, Plaintiff's Fourth Amendment rights were not violated. To hold a municipality liable under section 1983, there must be an underlying violation of the plaintiff's constitutional rights. *Sanford*, 456 F.3d at 314; *see also Kneipp v. Tedder*, 95 F.3d 1199, 1212

n.26 (3d Cir. 1996) (observing that "had there not been an underlying constitutional violation in the first instance, plaintiff's 'failure to train' claim against the City would not stand"); *Leddy v. Township of Lower Merion*, 114 F. Supp. 2d 372, 377 (E.D. Pa. 2000) (stating that "if the actions of [the police officer] did not reach the level of a constitutional tort, the Township through its police department can not be liable because of an inadequate policy or ineffective training program").

Here, Plaintiff failed to show that he suffered an underlying constitutional violation.  As discussed above, Officer Bozeman had probable cause to arrest Plaintiff for disorderly conduct. *See supra* at Section III.A.  Thus, Plaintiff has failed to demonstrate one of the required elements of a malicious prosecution claim.  As a result, summary judgment is appropriate with regard to Plaintiff's malicious prosecution claim against the City of Philadelphia.  *See McCabe v. City of Phila.*, No. 01-3975, 2002 U.S. Dist. LEXIS 23500, at *16 (E.D. Pa. Nov. 13, 2002) (granting the city's motion for summary judgment on section 1983 claims because the police officer had probable cause to arrest the defendant and thus no underlying constitutional violation occurred).

However, even if Plaintiff was able to show that Officer Bozeman's actions violated his constitutional rights, Plaintiff's section 1983 claims against the City of Philadelphia nevertheless fail.  Plaintiff fails to offer any evidence that the City of Philadelphia has a policy, practice or custom that contributed in any way to the harm he has alleged.  Instead, Plaintiff merely contends that the City of Philadelphia was on notice of Officer Bozeman's "propensity for untruthfulness" because Officer Bozeman had been previously disciplined for violating sick leave policies, failing a drug test, and pleading guilty to two incidents of check fraud.  (Pl.'s City Resp. 5-6.)  Plaintiff seems to suggest that because the City of Philadelphia was on notice of what Plaintiff characterizes as "untruthful acts" committed by Officer Bozeman, it should have

13

taken precautions to ensure that future violations would not occur, one of which being maliciously prosecuting Plaintiff for disorderly conduct.  Plaintiff's argument is meritless. Officer Bozeman's disciplinary infractions in no way relate to her duties as a police officer to execute arrests and issue citations in accordance with the law.  Moreover, even accepting the premise that Officer Bozeman's disciplinary infractions evidenced her propensity for untruthfulness, Plaintiff fails to show how this propensity, or the City's awareness of this propensity, caused or was the "moving force" behind his alleged constitutional harm.  *See Brown*, 520 U.S. at 400 (holding that municipal liability can only be imposed when "*deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights") (emphasis in original).

Plaintiff's failure-to-train theory of liability also fails.  Plaintiff offers no evidence that the City of Philadelphia's police officer training, supervision, or discipline was in any way inadequate, or amounted to a deliberate indifference to Plaintiff's constitutional rights.  Plaintiff also fails to show a pattern of violations, or that the need for additional or different training was so obvious.  Clearly, the evidence is insufficient to support municipal liability.  The City of Philadelphia's request for summary judgment will be granted.

**C.   Common Law Malicious Prosecution Claims (Count V)**

Plaintiff also asserts common law malicious prosecution claims against both Defendants. Defendants contend that these claims are barred by the Pennsylvania Political Subdivision Torts Claim Act, 42 Pa. Cons. Stat. § 8541 ("PSTCA").  The PSTCA grants local agencies immunity from liability for damages caused by agency employees subject to eight specifically enumerated

exceptions.  42 Pa. Cons. Stat. § 8541.[4]  Malicious prosecution is an intentional tort, which does not fall under one of the exceptions to liability.  *See* 42 Pa. Cons. Stat. § 8542; *see also Credico v. West Goshen Police*, No. 13-1255, 2013 U.S. Dist. LEXIS 164214, at *6-7 (E.D. Pa. Nov. 18, 2013) (barring the plaintiff's state law malicious prosecution claim against the township under the PSTCA since the claim does not fall under one of the eight enumerated exceptions to agency immunity); *see also Pepiton v. City of Farrell*, No. 05-573, 2005 U.S. Dist. LEXIS 23873, at *12-13 (W.D. Pa. Oct. 17, 2005) (dismissing malicious prosecution claim against city and county defendants since the claim is barred by the PSTCA).

Plaintiff argues that the immunity afforded by the PSTCA does not apply here because Bozeman's actions were willful.  Plaintiff relies on section 8550 of the PSTCA, which provides another exception to official immunity when the actions of the local agency or employee "constituted a crime, actual fraud, actual malice or willful misconduct."  42 Pa. Cons. Stat. § 8550.  However, this exception to immunity applies only to claims against individual employees of the agency and not the agency itself.  *See* 42 Pa. Cons. Stat. § 8550; *see also Beard v. Borough of Duncansville*, 652 F. Supp. 2d 611, 628 (W.D. Pa. 2009) (explaining that the willful misconduct exception to agency immunity does not apply to the municipal defendant, which is immune from the intentional torts of its employees).  Therefore, the City of Philadelphia is entitled to immunity for Plaintiff's malicious prosecution claim.  Although section 8550 would provide an exception to the claim against Bozeman, Plaintiff fails to point to any evidence in the record that shows that Bozeman acted willfully in violating Plaintiff's constitutional rights.

---

[4] The exceptions are:  (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals.  42 Pa. Cons. Stat. § 8542.

In any event, Plaintiff's common law malicious prosecution claims fail on their merits. To succeed on a malicious prosecution claim under Pennsylvania law, a plaintiff must show that the defendant "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." *Corrigan v. Cent. Tax Bureau of Pa.*, 828 A.2d 502, 505 (Pa. Commw. Ct. 2003).  For the same reasons the Plaintiff's section 1983 malicious prosecution claims fail, Plaintiff's common law malicious prosecution claims fail.  Based upon the undisputed facts contained in the record, Bozeman had probable cause to cite Plaintiff for disorderly conduct.  *See supra* at Section III.A.   Summary judgment will be granted in favor of Bozeman and the City of Philadelphia on Plaintiff's common law malicious prosecution claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment will be granted, and judgment will be entered in favor of Defendants Officer Bozeman and the City of Philadelphia.  An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**